**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:07CV1051 SNLJ |
| RELIV INTERNATIONAL, INC., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (#29) filed August 29, 2008. Plaintiff filed a brief in opposition (#31), October 1, 2008. Defendant then filed a reply (#35) on October 20, 2008.

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), brought this action on behalf of Jason Hood ("Mr. Hood") alleging violations of the Americans with Disability Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Specifically, plaintiff alleges defendant, Reliv International, Inc. ("Reliv"), violated the ADA when it allegedly failed to accommodate Mr. Hood and terminated his employment because he suffered from renal failure due to chronic kidney disease. Defendant moved for dismissal arguing that plaintiff is unable to prove any of the *prima facie* elements of discrimination under the ADA. Further, defendant argues that plaintiff cannot demonstrate the requisite intent necessary.

**I. Statement of the Case**

Mr. Hood began working for the defendant on July 9, 2003, as a shipping and receiving clerk and worked in that capacity until he was dismissed March 4, 2004. His job as a shipping and receiving clerk required the lifting and moving of boxes. Defendant characterized the

shipping and receiving clerk's duties as requiring the lifting of boxes of various weights, up to 60 pounds. In January, 2004, while Mr. Hood was on leave due to his kidney disease, the lifting requirement was printed in a formal job description. Mr. Hood reviewed the document during his deposition and agreed with the description and stated he was occasionally required to lift boxes weighing 60 pounds and frequently required to lift boxes ranging from 21 to 50 pounds.

In October 2003, Mr. Hood began seeing Dr. Anibal Melo for the kidney condition. At some point in 2003, Mr. Hood mentioned to his supervisor at Reliv, Mr. Walker, that he was going to have to start dialysis for his kidneys. In early January 2004, Mr. Hood informed Mr. Walker that he would need to be off work for four weeks so that he could be trained on dialysis. Mr. Hood began his medical leave on January 7, 2004. Defendant was provided with a note from Dr. Melo explaining the nature and duration of Mr. Hood's absence.

At the end of his four-week leave, Mr. Hood contacted Reliv's Human Resources department and requested a two-week extension, which was granted. There is disagreement regarding the amount of contact Mr. Walker and Mr. Hood had while Mr. Hood was on leave. The parties agree, however, that on March 4, 2004, Mr. Walker and Mr. Hood had a conversation about when Mr. Hood would be returning to work. Mr. Hood informed Mr. Walker that he was unsure of his return date because he had not yet been released by his doctor. Either at this point or in their next conversation, Mr. Walker told Mr. Hood that he would have to present a release from his doctor before returning to work. Mr. Walker also informed Mr. Hood that, because work was slow and the department was fully staffed, he would not be able to wait for Mr. Hood to be released and was going to have to terminate him. After this conversation, still on March 4, Mr. Hood called Dr. Melo's office to obtain a release. Mr. Hood then called Mr. Walker back on March 4, and told him that his doctor had released him but with a 15-25 pound lifting restriction and requested that Mr. Walker speak with him about this restriction. It appears that this meeting

2

took place, but the Court has no record before it of what was discussed because the parties filed only partial transcripts of the depositions with the Court

Soon thereafter, Mr. Walker and Ms. Santiago, the Human Resource contact at Reliv, met for approximately 20 minutes and discussed whether any accommodations could be made for Mr. Hood's lifting restrictions. They discussed two possible accommodations, transferring Mr. Hood to a different job at Reliv or allowing him to use a cart in his shipping and receiving position. They found no other position for which Mr. Hood was qualified and decided that the cart would not work. Dr. Melo was not contacted and there in no information filed in the record of any discussion Mr. Walker or Ms. Santiago had with Mr. Hood about his suggestions for an accommodation.

After his termination, Mr. Hood filed a claim with the EEOC for discrimination in violation of the ADA. After an investigation, the EEOC filed the present case against defendant. This Court will now turn to defendant's motion for summary judgment.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56©, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia

3

Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## III. Discrimination based on Disability

Plaintiff's complaint alleges that defendant violated the ADA by discriminating against Mr. Hood because of his disability and by failing to reasonably accommodate Mr. Hood. The ADA prohibits discrimination against a "qualified individual with a disability." To establish a *prima facie* case of discrimination under the ADA, plaintiff must demonstrate that (1) Mr. Hood's condition qualifies as a "disability"; (2) he was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) he suffered an adverse employment action due to his disability Pittari v. American Eagle Airlines, Inc. 468 F.3d 1056, 1061 (8th Cir. 2006); Kammuller v. Lommis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004).

### A. Was Mr. Hood disabled within the meaning of the ADA?

Defendant argues that Mr. Hood does not have a disability as defined by the ADA, and thus there can be no ADA violation. Defendant is correct that the ADA narrowly defines a "disability" to cover only those "physical or mental impairments that substantially limit one or more of the major life activities." Toyota Motor Mfg. v. Williams, 534 U.S. 184 (2002). However, as plaintiff correctly states, the Eighth circuit has found that kidney function in the cleaning of one's own blood cells is an activity "of central importance to a person's life," in other words, a major life activity. Kammuller, 383 F.3d at 785 (finding polycystic kidney disease which required dialysis to be disabling); *see* Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249 (4th Cir. 2006) (finding the ability to eliminate body waste through proper kidney functions of central importance to daily life); Ficus v. Wal-Mart Stores, Inc., 385 F.3d 378 (3rd Cir. 2004) (eliminating waste from the blood qualifies as a major life activity because, in its absence, death results). There is no question that Mr. Hood was disabled within the meaning of the ADA.

Defendant, however, also argues that the first element requires plaintiff not only to demonstrate Mr. Hood's health problems rose to the level of a disability, but also to demonstrate that defendant had knowledge of the disability. Defendant argues that, at best, it only knew in vague terms that Mr. Hood was being briefly hospitalized and would need to be trained on dialysis. The note from Mr. Hood's doctor clearly states that he needs time off work to be trained on peritoneal dialysis four times a day and that, once trained, he would begin treating himself at home in the evenings. Obviously, kidney dialysis is a serious treatment, and dialysis is common enough that defendant cannot claim that it was unaware that Mr. Hood had a serious kidney problem when it received this note. Defendant cites to several cases where serious medical conditions were not deemed to be disabilities because they merely caused a temporary inability to work. The note given to defendant states that upon completing his four weeks of training, Mr. Hood would be "doing his treatments at home in the evening," and the time off was needed to

"learn about and improve his illness to a manageable working level." A reasonable fact finder could decide that the continuation of treatment and only "improving the illness to a manageable level" put defendant on notice that this was not a short term illness.

**B. Was Mr. Hood qualified to perform the essential functions of his job with or without reasonable accommodation?**

**1. Qualified with a reasonable accommodation**

Defendant next argues that Mr. Hood could not perform the essential functions of his job with or without reasonable accommodation because Mr. Hood had a lifting restriction of 15 to 25 pounds and his job required him to be able to lift up to 60 pounds. This Court has previously stricken a portion of Dr. Melo's testimony relating to the use of a specialized lifting belt as an accommodation. No other reasonable accommodations have been presented, thus, this Court will only consider whether Mr. Hood could perform the essential functions of his job without a reasonable accommodation.

**2. Qualified without a reasonable accommodation**

The Plaintiff asserts that the 60 pound lifting restriction is not an essential job function and, even if it was essential, Mr. Hood was cleared to occasionally lift that amount of weight. The job description cited by defendant is a revised job description that became effective January 9, 2004, after Mr. Hood went on leave. Even then it lists the lifting requirement as a "Physical Demand" rather than an "Essential Function." However, the plaintiff then concedes that the physical demands of the job as it existed in March 2004, required Mr. Hood to occasionally lift up to 60 pounds. In addition, during his deposition Mr. Hood stated he would occasionally have to lift up to 60 pounds and that he agreed with revised job description from January. Even more notable, Mr. Hood testified that he was frequently required to lift boxes in the 21 to 50 pound range. The fact that the lifting of 60 pounds was only required occasionally does change the fact

that it was an essential job function, nor does the fact that it was listed as a "Physical Demand" rather than an "Essential Function." Mr. Hood needed to be able to at time lift these heavy boxes to complete his job and according to his lifting restrictions he was not able to do so. Clearly, lifting boxes weighing more than 15 to 25 pounds was an essential job function.

Plaintiff argues that he was able to perform this job function occasionally because his physician had cleared him to occasionally lift boxes in the 50 to 60 pound range. Yet, there is no evidence that this information was ever conveyed to defendant. Instead, Mr. Hood admitted that he told Mr. Walker and Ms. Santiago nothing more than that he had a 15 to 25 pound lifting restriction. Although he testified that Dr. Melo had cleared him for heavier weights occasionally, he never stated that spoke with anyone at Reliv about the modified restriction. In addition, neither Mr. Walker nor Ms. Santiago gave any indication that they were aware that Mr. Hood could occasionally lift more than 15 to 25 pounds. While it is true the release itself does not give a weight lifting restriction, the note also provides no specifics for Mr. Hoods release except the date upon which he can return to work. All parties stated that when Mr. Hood informed Mr. Walker that he had been cleared by his doctor, he stated that he was cleared with a 15 or 15 to 25 pound lifting restriction. Defendant reasonably believed Mr. Hood could not perform the lifting requirements of his job because that is all the information Mr. Hood conveyed to them.

This Court finds that defendant has established that occasionally lifting up to 60 pounds was an essential function of Mr. Hood's job. Plaintiff presented no evidence of an accommodation that would have allowed Mr. Hood to perform his job at Reliv. In addition, there is no evidence that Mr. Hood informed the defendant that he could perform his job without an accommodation. Any liability of the defendant for failure to discover this information will be discussed below. Absent either of these situations, there can be no claim for discrimination under the ADA and that claim must be dismissed

7

**C. Did Mr. Hood suffer an adverse employment action because of his disability?**

Absent a showing that Mr. Hood could have fulfilled his essential job functions with or without an accommodation, there can be no case for discrimination under the ADA and there is no need to consider the final *prima facie* element.

## IV. Failure to Accommodate

Plaintiff's compliant alleges both discrimination and failure to accommodate Mr. Hood's disability. To demonstrate a failure to accommodate, plaintiff must also show that (1) defendant knew Mr. hood was disabled; (2) that Mr. Hood requested accommodations; (3) that defendant did not make a good faith effort to assist him in making accommodations; and (4) that defendant could have reasonably accommodated, but for its lack of good faith. Cravens v. Blue Cross & Blue Shield, 214 F.3d 1011, 1021 (8th Cir. 2000). If an employee fails to make a request for an accommodation, then his employer has no duty to accommodate. Ballard v. Rubin, 284 F.3d 957, 960 (8th Cir. 2002). If, however, an employee does request an accommodation, the employer must engage in an interactive process to determine whether accommodations are possible. Id.

Plaintiff states no specific failure in its complaint, only that there was a failure to accommodate. In its summary judgment motion, plaintiff then specifically alleges that defendant failed to engage in the interactive process. Defendant responded in its reply brief that this argument should be disregarded because a failure to engage in the interactive process was not previously raised. This Court finds, however, that, participation in the interactive process is part of a claim for accommodation. Plaintiff's allegation that defendant failed to accommodate put defendant on notice that plaintiff would attempt to show that defendant had failed to satisfy some or all of the requirements of accommodation, one of which was failure to engage in the interactive process once a request for accommodation is made. The Court will now turn to the facts before it regarding failure to accommodate Mr. Hood.

This Court has already determined that defendant was or should have been aware that Mr. Hood had a disability. Thus, the discussion will begin with whether Mr. Hood requested accommodations. Defendant repeatedly states that Mr. Hood never requested an accommodation and therefore there was no duty to begin the interactive accommodation process. Plaintiff never responds to this argument. At best plaintiff responds by arguing that Mr. Hood was never told who to speak with about receiving an accommodation. However, a claim for failure to reasonably accommodate requires that an actual request be made. A request need not contain any magic words but it must be sufficient to inform the employer that the employee is seeking an accommodation. Lowery v. Hazelwood School District, 244 F.3d 654, 660 (8th Cir. 2000). Plaintiff itself points out that Mr. Hood never conveyed to the defendant his desire to be accommodated. Absent this request, a duty to initiate the interactive process was never triggered.

Further, even if plaintiff had demonstrated that Mr. Hood requested accommodation, plaintiff's argument makes little sense because it also maintains that he did not need accommodation. Mr. Hood and Dr. Melo both stated in their depositions that Mr. Hood had been cleared to occasionally lift up to 60 pounds so that he could perform his job duties at Reliv without accommodation. Yet, plaintiff is bringing a claim against defendant for failure to accommodate. If Mr. Hood was cleared to lift weights up to 60 pounds and perform all his duties at Reliv, then he did not need an accommodation and there can be no cause of action for failure to accommodate. This Court is perplexed as to why, if he was cleared to perform all the lifting duties of his job, Mr. Hood never conveyed this information to defendant. Yet, the argument before this Court, as presented by the plaintiff, is that Mr. Hood could perform all his duties at Reliv without an accommodation which by necessity precludes a claim for failure to reasonably accommodate.

**IV. Application for Social Security Disability Insurance**

The fact that Mr. Hood eventually applied for and was awarded Social Security Disability Insurance because he was unable to perform the essential functions of his job counters plaintiff's claim that Mr. Hood was cleared to lift up to 60 pounds. The application is certainly not dispositive on the issue but highlights to the Court the contradictory testimony presented by plaintiff and Mr. Hood regarding his lifting restrictions. Plaintiff repeatedly argued that Mr. Hood was cleared to lift up to 60 pounds and could perform his job functions without accommodation. Yet, Mr. Hood also testified and claimed in this application he was limited to lifting 15 to 25 pounds and could not perform his essential job functions.

## VI. Conclusion

This Court finds that there are no genuine issues of material fact that preclude summary judgment. Even giving the plaintiff the benefit of every inference, based on the facts presented, plaintiff has failed to show that defendant discriminated against and/or failed to accommodate Mr. Hood.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **GRANTED** in its entirety.

Dated this ___3rd___ day of March, 2009.

_____
UNITED STATES DISTRICT JUDGE